JOHN HEARD *versus* CHARLES HALL.

The guardian of a person *non compos mentis*, sold certain real estate belonging to his ward, under a license of court, and conveyed the same with a covenant that he was duly authorised to sell the granted premises. It was *held*, that the guardian was estopped by such covenant from setting up a claim in his own right, to any portion of such real estate, under a previous conveyance to him, in his own right.

THIS was a petition for partition, in which the petitioner claimed to have twenty-one undivided thirty-sixth parts of a certain messuage set off to him in severalty. The respondent, in his plea, alleged, that he was seised of one undivided moiety, and traversed the allegation of the petitioner, as to his

Heard
*v*
Hall.

seisin of twenty-one undivided thirty-sixth parts of the premi
ses ; and issue was joined thereon.

It appeared, that in 1773, Hugh Hall, who was seised of
the premises, devised them to his son, Benjamin, during his
life, and, if he should have children, then, at his death, to his
children lawfully begotten, and their heirs forever ; and that
Benjamin was married in 1774, and had six children, to wit,
Polly, Benjamin, William, Sally, Pitts, and Charles.   Ben-
jamin and William died in infancy.   Polly died at mature age,
leaving issue, a son, who died, under age and unmarried, in
the lifetime of Benjamin, the devisee.

On April 23, 1799, Benjamin Hall, the elder, upon an in-
quisition duly had, was found to be a person *non compos men-
tis*, and the petitioner was appointed by the judge of probate
to be his guardian.   This guardianship continued until the
death of the ward, on March 12, 1830.

On July 13, 1813, Pitts Hall executed a deed purporting
to convey to the petitioner, one fourth part of the premises.
as his interest therein, for a valuable consideration, and short-
ly afterwards died without issue.

In 1814 the petitioner, in his capacity as guardian, present
ed a petition to this court, for a license to sell so much of the
real estate of his ward as should be necessary for the payment
of the debts incurred for the support of the ward and his fam-
ily.   License was accordingly granted to sell so much as
should be required to raise the sum of $3093·78, and the in-
cidental charges amounting to the sum of $30.   By virtue of
this license the petitioner sold a portion of the premises, which
was bid off by Isaac F. Coffin, for the sum authorized to be
raised by such sale ; and on June 26, 1815, the petitioner ex-
ecuted a deed purporting to convey this portion to Coffin, with
a covenant that the petitioner was lawfully authorized and em-
powered to make sale of the granted premises.   On the same
day, Coffin, for the alleged consideration of $3500, reconvey-
ed the same to the petitioner.   On September 20, 1831, an
agreement was entered into between the petitioner and the re-
spondent and his sister, Sally, by which it was provided that
the petitioner should release to them all the right and title
which he acquired in virtue of the deed from Coffin, and that

they should, on their part, pay to the petitioner the sum of $1000. A quit-claim deed was accordingly made by the petitioner. in pursuance of this agreement, on September 20, 1831, and he afterwards received from them the sum agreed upon.

On June 12, 1834, Sally, for a valuable consideration, conveyed all her interest and estate in the premises to the petitioner.

No evidence was produced tending to show, that the respondent knew of the conveyance from Pitts Hall to the petitioner, other than the legal presumption of notice arising from the recording of the deed in the registry of deeds.

A default was entered by consent. Judgment was to oe rendered for partition, and an assignment to be made to the petitioner of such portion of the premises, as he should be entitled to, in the opinion of the Court, upon these facts.

*Sohier* and *Aylwin*, for the petitioner, cited *Hurd* v. *Cushing*, 7 Pick. 169 ; *Whitaker* v. *Sumner*, 7 Pick. 551.

*C. G. Loring* and *E. J. Loring*, for the respondent, citea *Storrs* v. *Barker*, 6 Johns. Ch. R. 167 ; *Allen* v. *Sayward*, 5 Greenl. 227 ; *Poor* v. *Robinson*, 10 Mass. R. 131 ; *Willing* v. *Brown*, 7 Serg. & R. 467 ; *Buchanan* v. *Moore*, 13 Serg. & R. 304 ; *Hall* v. *Leonard*, 1 Pick. 27 ; *Niven* v. *Belknap*, 2 Johns. R. 573 ; *Coe* v. *Talcott*, 5 Day, 88 ; *Dann* v. *Spurrier*, 7 Ves. 231 ; *Hunsden* v. *Cheyney*, 2 Vernon, 150 ; *Jackson* v. *Bull*, 1 Johns. Cas. 81.

WILDE J. delivered the opinion of the Court. It is agreed, that Benjamin Hall took under the will of Hugh Hall an estate for life only, and that his children took a remainder in fee simple as purchasers, which vested on the birth of the eldest child, and opened afterwards to let in the after born children; and this unquestionably is the true construction of the will.

In 1813, the petitioner purchased of Pitts Hall his share in the premises, supposed then to be one undivided fourth part of the same, but which it is now agreed was only one sixth part thereof.

The principal question arising in the case, is, whether the petitioner can now set up his title derived from Pitts Hall, or whether he is not estopped by his deed to Coffin, as to that

*Heard v. Hall.*

*April 2d*

*April 8th*

part of the premises which was conveyed to him as the property of Benjamin Hall. That he would not be allowed to set up such a claim in a court of equity, is undeniable, this being a strong case within the well established rule of equity, that where one having title acquiesces in the disposition of his property, for a valuable consideration, by a person pretending to title, and having color of title, he shall be bound by such disposition, and shall not afterwards be allowed to set up his own title against the purchaser. And so it has been held, that if one having title stands by while another purchases from a third person claiming title, and does not forbid the purchase, or disclose his own title, he shall be bound. *A fortiori*, if he encourages the purchase ; or, as in the present case, a person sells his own property, as the property of another, to a bonâ *fide* purchaser, for a valuable consideration.

But although this rule has been long established as a rule of equity, it does not appear to have been adopted or considered as a rule at common law, excepting in the state of Pennsylvania, where the courts, having no equity jurisdiction, have introduced into their system of jurisprudence many rules and principles of equity, in furtherance of justice, and to supply the supposed defects of the common law.

The question then is, whether, by the principles of the common law, the plaintiff is estopped to set up his title from Pitts Hall against the present respondent.

In some respects, and to a certain extent, legal and equitable estoppels are found to correspond. In general, the grantor is estopped by his deed to aver, that he had no interest. *Fairtitle* v. *Gilbert*, 2 T. R. 171. Thus, if an heir apparent, having only the hope of succession, conveys an estate during the life of his ancestor, and afterwards the inheritance descends upon him, he is estopped to say that he had no interest at the time of the conveyance. *Hayne* v. *Maltby*, 3 T. R. 441. So a lessee, if the lease be made by indenture, is estopped to say that the lessor had nothing in the land. Or if a man take a lease of his own land, by deed indented, he is estopped, during the continuance of the lease, to say, that the lessor had no interest. *Co. Lit.* 47 *b*. So on a bond, with condition to perform covenants in a certain indenture men-

tioned, the obligor is estopped from pleading that no such indenture was executed. *Hosier* v. *Searle*, 2 Bos. & Pull. 299.

The general principle, therefore, is well established, that a party is not allowed to plead, or to prove, any matter inconsistent with the terms of his deed.

On this principle the case of *Poor* v. *Robinson*, 10 Mass. R. 131, was decided ; a case, in most respects, precisely similar to the present. In that case, the demandants claimed as children and heirs of Thomas Poor, their father ; and the tenant produced a deed of release, from two of the demandants, by which they released and quit-claimed unto him, all the right, of which the testator, their father, died seised, in and to sundry lots of land, including the demanded premises. It appeared, that the testator was disseised, at the time of his death, and so the deed was inoperative to pass the right of the testator ; but it was held to be good, by way of estoppel, to extinguish the right descending from the testator to his two children, the executors, and thus far the title to the tenant was confirmed ; the court holding that they were not entitled to recover against their own bargain and contract with the tenant.

That case and this, excepting in two particulars, are similar and depend on the same principle. In *Poor* v. *Robinson*, the executors sold in their capacity as executors ; in this case, the petitioner sold in his capacity as guardian. In the former case, the deed of the executors purported to convey the right of the testator by virtue of a power given them by his will. In the present case, the petitioner sold by virtue of a license duly granted ; and in neither case did the purchaser suppose he was purchasing the right and title of his grantor or grantors, for no such right and title was supposed to exist.

But in two particulars the cases differ. In *Poor* v. *Robinson*, the executors' deed purports to convey the right only of which the testator died seised. But in the present case, the petitioner's deed purports to be an unqualified grant of the land to the grantee in fee simple. It purports to pass the whole estate, and it is utterly inconsistent with the plain import of the grant, to allow the petitioner now to show that only a part

of the estate passed by that conveyance. The other particu-
lar in which the cases differ is of more importance. In *Poor
v. Robinson*, there does not appear to have been any express
covenants. But in this case the petitioner expressly cove-
nants that he is lawfully authorized and empowered to make
sale of the granted premises, that is, of the whole estate.
Most certainly he was not so authorized ; and this covenant
operates, to avoid circuity of action, by way of rebutter, and
estops the petitioner from setting up his title from Pitts Hall.
The respondent, holding under the deed to Coffin, has a right
to avail himself of this estoppel.

The result is, as we understand the case, that as to that
part of the premises which was sold to Coffin, the petitioner
is entitled to a moiety, and as to the residue to twenty
one undivided thirty-sixth parts as stated in the petition ; and
partition is to be made accordingly.